UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN STALKER,

    *Plaintiff*,                         CASE NO. 2:15-cv-14325

v.                                    DISTRICT JUDGE DAVID M. LAWSON
                                        MAGISTRATE JUDGE PATRICIA T. MORRIS

MARIO BAYONETTO,
and WILSON,

    *Defendants*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the reasons stated below, I recommend that Defendants' Motion to Dismiss (Doc 13) be **GRANTED** and Plaintiff's complaint be **DISMISSED with prejudice**.

### II.    REPORT

#### A.    Introduction and Procedural History

Plaintiff is a *pro se* prisoner currently incarcerated at the Federal Correctional Institution at Milan, Michigan ("FCI Milan"). (Pl. Compl. Doc. 1, at ID 1.) The events that gave rise to the above entitled action occurred while Plaintiff was confined at FCI Milan. (*Id.* at ID 7.) Defendant Mario Bayonetto is a physician assistant ("PA Bayonetto") and Defendant Dr. George Wilson ("Dr. Wilson") is a staff physician at FCI Milan (collectively "Defendants"). (Doc. 13, at ID 47.) This matter was referred to the undersigned magistrate judge for all pretrial matters on December 21, 2015. (Doc. 5.)

Pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs when treating a skin infection in violation of the Eighth Amendment of the United States Constitution. (Doc. 1.) Plaintiff's complaint alleges that on October 2, 2015, an abscess began forming on Plaintiff's right forearm; it turned red and began to severely itch. (*Id.* at ID 7.) On October 5, 2015, PA Bayonetto refused to drain the abscess stating that it would "bust on its own." (*Id.*) PA Bayonetto believed the abscess was a bacterial infection and prescribed an antibiotic, but refused to prescribe 800 mg ibuprofen. (*Id.*) The abscess ruptured on October 6, 2015; the FCI Milan health services department was unable to treat Plaintiff, so he "was forced to himself clean and drain all leakage from the ruptured wound." (*Id.*)

On October 8, 2015, PA Bayonetto asked Dr. Wilson to examine the wound. (*Id.*) Plaintiff asked to be transported to an emergency room because he had been experiencing "a high-grade fever, cold sweats, and body aches" since October 6. (*Id.*) Dr. Wilson merely prescribed another antibiotic and stated that he wanted to "wait and watch" the wound for sixteen hours." (*Id.* at ID 7-8.) On October 9, 2015, Dr. Wilson and Dr. William Malatinsky independently examined Plaintiff's wound. (*Id.* at ID 8.) Dr. Malatinsky informed Plaintiff that he needed "immediate placement into isolation and to be taken to the emergency room." (*Id.*) At approximately 1:20 p.m. on October 9, 2015, Plaintiff was taken to the emergency room where physicians "cut open the wound, cleaned it, and administered antibiotics intravenously." (*Id.*) Plaintiff was informed that exploratory surgery would be necessary. (*Id.*) On October 15, 2015,

PA Bayonetto "placed Plaintiff on a call-out" and prescribed 800 mg ibuprofen, which was dated October 5, 2015 and October 13, 2015. (*Id.* at ID 7.)

Plaintiff "contends that standard medical operating procedure for treatment of an infection such as occurred in the instant case would have been to make a small incision in the infected area, drain the infected area, and provide the inmate with the appropriate antibiotic." (*Id.* at ID 8.) Plaintiff further asserts that PA Bayonetto's delay "in making reasonable treatment determinations" resulted in hospital physicians making "a four []inch incision (accompanied by an additional ½-inch incision in an adjacent area) in the Plaintiff's forearm." (*Id.*) Plaintiff further asserts that FCI Milan was unable to take remedial measures thus it was not necessary for Plaintiff to file and pursue the availability of administrative remedies. (*Id.*) Plaintiff seeks $50,000 in compensatory damages and such other relief as the Court deems just and proper. (*Id.* at ID 9.)

On March 14, 2016, Defendants filed a motion to dismiss arguing that Plaintiff failed to exhaust administrative remedies, Plaintiff has failed to state a claim upon which relief can be granted, and Defendants are entitled to qualified immunity. (Doc. 13, at ID 46.) Plaintiff filed a response on March 28, 2016, (Doc. 15,) and Defendants filed a reply on April 13, 2016. (Doc. 16.) Accordingly, Defendants' motion to dismiss (Doc. 13.) is ready for report and recommendation without oral argument under Local Rule 7.1.

    **B.**    **Exhaustion Standards**

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision." (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

4

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

A plaintiff does not need to show proper exhaustion as a part of his or her complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.* The court may take judicial notice of a prisoner's administrative grievances for purposes of determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Bradfield v. Corr. Med. Servs.*, 2008 U.S. Dist. LEXIS 124550, at *9-14 (W.D. Mich. July 3, 2008).

**C.     Law & Analysis**

The Bureau of Prisons ("BOP") administrative remedy process provided to federal inmates consists of four steps. 28 C.F.R. § 542, Subpt. B. First, an inmate must inform staff, who will attempt to informally resolve the issue. 28 C.F.R. § 542.13(a). Second, if informal resolution fails, an inmate must submit a formal written administrative remedy request (a Bp-9 request), within twenty days of the date on which the basis of the request occurred. 28 C.F.R. §

542.14(a). Third, if the inmate is dissatisfied with the response he or she may file an appeal to the Regional Director (a BP-10) within twenty days of the response to the administrative remedy request. 28 C.F.R. § 542.15(a). Fourth, if the inmate is dissatisfied with the regional response, within thirty days, he or she may file a national appeal with the Office of General Counsel in Washington, D.C. (a BP-11). *Id.* "Appeal to General Counsel is the final administrative appeal." *Vaughn v. Terris*, No. 2:15-CV-10092, 2015 U.S. Dist. LEXIS 73596, 2015 WL 3605080, at *2 (E.D. Mich. June 8, 2015)

BOP administrative grievance records, which the court may take judicial notice of, indicate that Plaintiff has never filed a formal administrative remedy request regarding his medical care. (Doc. 13, Ex. A, at ID 68, 85.) Further Plaintiff admits that he did not file a formal complaint or any of the three appeals. (Doc. 1, at ID 4; Doc. 15, at ID 89.)

Plaintiff argues that this requirement should be waived because "all events leading to Stalker's ultimate physical injury and damage occurred within an approximate one week time frame, and, accordingly, the filing of administrative remedies during this period of time was a practical impossibility." (Doc. 15, at ID 89.) Essentially, Plaintiff argues that because he seeks only monetary relief, it would have been futile to seek a formal administrative remedy.

> However, the requirement that an inmate must exhaust administrative remedies
>
> "is a strong one. . . . [E]xhaustion is required even if the prisoner subjectively believes the remedy is not available, *Brock v. Kenton County*, 93 F. App'x 793, 798 (6th Cir. 2004); even when the state cannot grant the particular relief requested, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L. Ed. 2d. 958 (2001); and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .'" *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006).

*Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011).

6

Thus Plaintiff's argument is unavailing. He is required to exhaust all available administrative remedies even if the monetary relief he seeks cannot be granted. *See Booth*, 532 U.S. at 741.

Plaintiff next argues that his claim should not be dismissed because he was released on March 24, 2016, "and in the event that the Court would elect to . . . dismiss this matter without prejudice, Stalker will thereafter be unable to refile this action, having fully exhausted his administrative remedies, following his release from federal custody." (Doc. 15, at ID 89-90.) Defendants argue that Plaintiff may still pursue his administrative remedies because he was not released from federal custody on March 24, but was transferred from FCI Milan to a Residential Re-entry Center ("RRC"). (Doc. 16, at ID 103.) Plaintiff is currently eligible for release on September 16, 2016. (*Id.*)

Regardless of whether Plaintiff has been released, the Sixth Circuit has held that the PLRA's exhaustion requirements still apply "where the prisoner was subsequently released from prison such that, when the court considers the motion to dismiss for failure to exhaust, plaintiff is no longer a prisoner." *Cox v. Mayer*, 332 F.3d 422, 424 (6th Cir. 2003). Thus, "[a] plaintiff's status as a prisoner for purposes of the statute is determined at the time he files suit, *Cox*, 332 F.3d at 424 . . . ." *Siler v. Baldwin*, No. 08-15077, 2011 WL 6371012, at *3 (E.D. Mich. Dec. 20, 2011); *see also Rose v. Saginaw Cnty.*, 232 F.R.D. 267, 277 (E.D. Mich. 2005) ("This Court is convinced that the plain language of section 1997e(a) compels the conclusion that is requirements apply to prisoners who are confined when they file their lawsuits, and not to former inmates who bring actions after their release from custody."). Thus since it is

7

uncontested that Plaintiff was a prisoner at the time he filed the instant action, he must satisfy the PLRA's requirements regardless of whether he has been released from federal custody while this case remains pending.

Plaintiff's final argument is that the PLRA does not apply because his complaint does not challenge prison conditions. (Doc. 15, at ID 90.) However, it is well established that inmate suits alleging inadequate medical care are challenges to prison conditions. *See Porter*, 534 U.S. at 532 ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Cox*, 332 F.3d at 424 (finding a complaint alleging that a prisoner was assaulted and "forcibly medicated" fell within the "expansive reading of the term 'prison conditions [given] by the United States Supreme Court and [the Sixth Circuit].")

Thus I suggest that Plaintiff's claim should be dismissed for failure to exhaust administrative remedies. I am also persuaded by Defendants' argument that Plaintiff's claim should be dismissed for a failure to state a claim as discussed below.

### D.    Failure to State a Claim

A civil rights action under 42 U.S.C. § 1983 or *Bivens* consists of two elements: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

### E.  Law and Analysis

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

The inquiry is two-pronged, consisting of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The

objective inquiry asks whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298. The Court "distinguish[es] between cases where the compliant alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 858 n.5 (6th Cir. 1976). In cases involving a dispute over the adequacy of treatment, "federal courts are generally reluctant to second guess medical judgements and to constitutionalize claims which sound in state tort law." *Id.* "Where the claimant received treatment for his condition, as here, he must show that his treatment was so woefully inadequate as to amount to no treatment at all." *Mitchell v. Hininger*, 553 Fed. App'x 602 (6th Cir. 2014) (internal quotations omitted).

Defendants contend that Plaintiff has failed to state a claim of deliberate indifference because Plaintiff acknowledges that Defendants treated his skin infection and merely alleges that he disagreed with the defendants' approach to his medical treatment. (Doc. 13, at ID 54-62.) Such claims have been dismissed for failure to state a claim. *See, e.g.*, *McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("[A]s the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment."); *Catanzaro v. Mich. Dep't of Corr.*, 2010 U.S. Dist. LEXIS 39538, 2010 WL 1657872, at *3 (E.D. Mich. Feb. 28, 2010) (dismissing claims of deliberate indifference where the plaintiff was examined and given treatment because "differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment

are insufficient to state a deliberate indifference claim."), *adopted by* 2010 WL 1657690 (E.D. Mich. Apr. 22, 2010); *Allison v. Martin*, 2009 U.S. Dist. LEXIS 79135, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009) (affirming the magistrate judge's finding that the plaintiff failed to state a claim because "Plaintiff received medical attention for his eczema, but simply disagreed with the speed and type of treatment that he received.")

Defendants also direct the court to *Alspaugh v. McConnell*, 643 F.3d 162 (6th Cir. 2011) and *Davis v. Schmidt*, 57 F.R.D. 37 (W.D. Wis. 1972). In *Alspaugh* the prisoner alleged that prison staff was deliberately indifferent in treating a neck injury. 643 F.3d at 165. Alspaugh was seen by a nurse immediately after the injury occurred, but was not fully examined by a physician until eighteen days after the incident. *Id.* The physician ordered an x-ray, noted limited range of motion in Alspaugh's neck, and prescribed a soft cervical collar. *Id.* In December, after further examination, the physician ordered continued use of the soft cervical collar, warm compresses, and Motrin. *Id.* Eventually Alspaugh was surgically treated but only after he had been transferred to another facility. *Id.* The court granted defendant's motion for summary judgment concluding that although "Alspaugh certainly would have desired more aggressive treatment, he was at no point denied treatment." *Id.* at 169.

Similarly in *Davis*, the prisoner alleged that Defendants denied his request for psychiatric treatment and refused to treat his injured knees. 57 F.R.D. at 39. Dismissing the claim on a motion for summary judgement the court found that "it is undisputed that on a number of occasions the staff psychiatrist examined plaintiff, diagnosed his problems, and prescribed drugs for him. It is also undisputed that doctors examined plaintiff's knees on three occasions, finding

no problems, and that his knees were X-rayed. Since it is clear that Plaintiff has not been deprived of essential medical care, defendants are entitled to judgment on this claim." *Id.* at 41.

Plaintiff argues that Defendants reliance on *Alspaugh* and *Davis* is misplaced because his claim is factually distinct. With regard to *Alspaugh*, Plaintiff argues that Alspaugh "only presented subjective complaints of pain which could not be objectively 'ruled upon' by the defendant prison physician until a later full examination occurred." (Doc. 15 at ID 91-92.) In the present case, Plaintiff immediately "present[ed] significant objective symptoms, including, most prominently, an enlarged swelling on his right forearm . . . [and] indicated from the outset that he had previous experience with a forearm swelling where antibiotic treatment alone provided inadequate relief." (*Id.*) With regard to *Davis*, Plaintiff argues that psychiatric care "is a materially different set of treatment issues than is involved in strictly medical issues such as are involved in the instant case." (*Id.*) However, Plaintiff's arguments ignore the salient issue: Whether Plaintiff's complaint alleges a sufficiently serious deprivation of medical treatment. The objective or subjective nature of the injury is irrelevant at this stage of the analysis.

In support of his argument that the treatment he received was woefully inadequate, Plaintiff directs the court to *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994) and *Ricketts v. Ciccone*, 371 F. Supp. 1249 (W.D. Mo. 1974). In *Hathaway*, a physician saw and treated an inmate for hip pain from May 1980 to October 1982. 37 F.3d at 68. In July 1980 the physician discovered broken pins in the inmate's hip, but did not inform the inmate or discuss the possibility of surgery with him. *Id.* at 67. The inmate did not learn about the pins for a year, even though he made at least twenty complaints of hip pain during this period. *Id.* at 68. The

court held that a jury could reasonably infer that the physician was deliberately indifferent due to his "failure (1) to disclose the broken pins and to discuss the option of surgery with Hathaway despite his sudden resurgence of hip pain and (2) to refer Hathaway for re-evaluation for surgery until late 1982 despite requests for further treatment from Hathaway and student attorneys acting on his behalf." *Id.* at 68-69.

In *Ricketts*, the prisoner required medical care for his "chronic rhinitis caused by allergic sensitivity to an identified mold." 371 F. Supp. at 1256. All of the physicians who examined the prisoner agreed that transfer to a relatively dry climate would improve the prisoner's condition. *Id.* However, the treatment team refused to recommend transfer because of an erroneous interpretation of a prison policy. *Id.* The court held that the refusal to transfer the prisoner violated the prisoner's Eighth Amendment rights because it was the "best reasonably available" treatment. *Id.*

Plaintiff's circumstances substantially differ from those of the prisoners in *Hathaway* and *Ricketts*. Plaintiff's allegations establish that he received treatment for the abscess on his forearm. He was prescribed an antibiotic on October 5, examined by a physician and prescribed another antibiotic on October 8, and transferred to a hospital on October 9 after examinations by two physicians. Plaintiff does not allege that the examining physicians withheld information or arbitrarily decided not to prescribe the best treatment reasonably available. Nor does he allege that a member of the medical staff advised hospitalization or surgery prior to October 9. Plaintiff merely contends that defendants did not follow what he describes as standard operating procedure, delayed the appropriate treatment, and denied requested pain medication. Such an

argument, like *Alspaugh* and *Davis*, targets medical staff's failure to provide more, better, or faster treatment. Therefore, Plaintiff has failed to state a claim upon which relief can be based. *See also Carroll v. Davis*, No. 83-5162, 1984 U.S. App. LEXIS 14545 (6th Cir. Mar. 9, 1984) (unpublished) ("Plaintiff's allegation of being denied medical treatment for his back on one day does not state a claim of woefully inadequate medical treatment . . . ."); *Mitchell v. Hininger*, 553 Fed. App'x 602, 606 (6th Cir. 2014). ("Delayed physical therapy no doubt falls short of the ideal or even the semi-ideal, but that does not make it so 'woefully-inadequate' as to amount to deliberate indifference.") Therefore I suggest that Plaintiff's claim should be dismissed with prejudice for failure to state a claim of deliberate indifference.

Because I find that Plaintiff's complaint should be dismissed with prejudice for failure to state a claim, it is not necessary to address Defendants' qualified immunity argument.

### III. CONCLUSION

For all the reasons stated above, I recommend that Defendants' motion to dismiss be **GRANTED**, and Plaintiff's complaint be **DISMISSED with prejudice**.

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2016              S/ PATRICIA T. MORRIS
                                  Patricia T. Morris
                                  United States Magistrate Judge

# **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Sean Stalker #92115198 at Milan Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 1000, Milan, MI 48160.

Date: August 9, 2016                       By s/Kristen Krawczyk
                                                              Case Manager to Magistrate Judge Morris